## City of Philadelphia Petition

*Jerome J. Shestack*, first deputy city solicitor; *Helen S. Chait*, deputy city solicitor; and *Abraham L. Freedman*, City Solicitor, for petitioner.

HAGAN, J. April 28, 1954.—This is a proceeding under the Act of May 21, 1921, P. L. 1054, 53 PS §§6757 et seq., in which the City of Philadelphia has filed a petition seeking the exclusion from its general indebtedness of a total of $37,750,000 proposed indebtedness about to be invested in the water supply system, the sewer system, and the Frankford Avenue trackless trolley line, as authorized by ordinances of the Council of the City of Philadelphia, approved March 31, 1953, and August 28, 1953.

The Act of 1921 implements section 8 of article IX of the Constitution of Pennsylvania, which created for Philadelphia a special class of indebtedness to be in-

vested in self-sustaining public improvements and utilities which may be incurred without regard to the limitation on the city's borrowing power. The Constitution provides that when the City of Philadelphia shall have incurred or is about to incur indebtedness expended or to be expended for any public improvement or utility which may reasonably be expected to yield revenues in excess of operating expenses sufficient to pay the interest and sinking fund charges thereon, such indebtedness may be excluded in ascertaining the debt-incurring capacity of the city.

On March 26, 1954, the city filed its petition, which was signed and sworn to by Joseph S. Clark, Jr., Mayor of the City of Philadelphia, and attested by the appropriate city officials in accordance with the requirements of the Act of May 21, 1921, P. L. 1054. Thereupon the court entered an order fixing April 23, 1954, at 10 a.m., in Room 243 City Hall, as the time and place for making the application pursuant to the prayer of the petition, and ordering publication of the notice of the hearing, in accordance with the requirements of the act. Publication was made in accordance with the order, and proof thereof was filed with the court.

The sole issue raised by this proceeding is one of fact: May the public improvements or utilities in which the proceeds of the proposed indebtedness are to be invested reasonably be expected to produce revenues to the city in excess of operating expenses sufficient to pay the interest and sinking fund charges on such indebtedness? If so, such indebtedness comes within the special class which under the Constitution and the Act of 1921, may be excluded from the calculation of its general indebtedness in determining the city's borrowing capacity.

At the hearing held on this petition on April 23,

1954, the city placed in evidence a series of exhibits showing a five-year projection, from 1954 to 1958, inclusive, of the net revenues which the water supply system and the sewer system of the city may reasonably be expected to yield during that period; and demonstrating that said net revenues, together with existing surplus, will be sufficient to pay the interest and sinking fund charges on the indebtedness invested or about to be invested in the water supply system and sewer system during the five-year period under consideration. With respect to the Frankford Avenue trackless trolley line, the city placed in evidence estimates projected through a six-year period, from 1954 to 1959, inclusive, showing that this trolley line may reasonably be expected to yield net revenues during said period sufficient to pay the interest and sinking fund charges on the indebtedness to be invested in the project.

As we stated in our memorandum opinion in City of Philadelphia Petition, 83 D. & C. 581, section 8 of art. IX of the Constitution does not provide any specific test period to determine the productivity of a self-sustaining utility, as does section 15 of art. IX for other municipalities. Section 15, which has been implemented by the Municipal Borrowing Law of June 25, 1941, P. L. 159, sec. 601, 53 PS §2011.601, accepts a five-year performance history as a satisfactory test of a self-sustaining public improvement. Therefore, the evidence produced by the city that a five-year projection of net revenues, interest and sinking fund charges with respect to the water supply system and the sewer system, and a six-year projection of the net revenues, interest and sinking fund charges with respect to the Frankford Avenue trackless trolley line is sufficient to sustain findings that the revenue to be derived by the city from the munici-

pal projects may reasonably be expected to yield sums in excess of operating costs sufficient to pay the interest and sinking fund charges on the indebtedness.

In this connection, it is to be observed that under section 5-801 of the Philadelphia Home Rule Charter the Water Department of the City of Philadelphia (which operates the city's water supply system and the city's sewer system) is required to fix rates and charges for the operation of the water supply system and the sewer system at levels sufficient to yield to the city an amount at least equal to operating expenses, interest and sinking fund charges on any debts incurred in the operation of said systems.

The only legal questions involved in this proceeding have already been determined in earlier proceedings brought under the Act of 1921. Two such questions were decided by this court in City of Philadelphia Petition 83 D. & C. 581 (C. P. No. 1, Philadelphia Co., 1953). First, we held that indebtedness invested in self-sustaining public improvements should be completely excluded and not merely deducted from the general indebtedness of the city in ascertaining its constitutional borrowing capacity. In so holding we relied on the decision of the Supreme Court of this State in Atkins v. Philadelphia et al., 339 Pa. 345 (1940) in which it was stated that new loans for investment in self-sustaining projects may be floated whether or not the city has any general borrowing capacity.

Second, we held that, upon application of the principles of statutory construction, "the conclusion is inescapable that the city is authorized to single out the indebtedness of one of its self-liquidating projects for separate presentation to the court" (83 D. & C. 581, 593). Accordingly, we concluded that the Act of 1921 does not require the city to bring before the

court all of its self-sustaining projects for review each time a proceeding is instituted for the exclusion of indebtedness to be invested in such a self-sustaining project.

A third question involved in this proceeding, relating to the Frankford Avenue trackless trolley line, was determined in City of Philadelphia Petition, 76 D. & C. 156 (C. P. No. 5, Philadelphia Co., 1951). In that case it was held that the requirements of the Act of 1921 are met when a lease is made with an operating company under the terms of which the rental payable by the lessee to the city is in excess of the operating expenses, interest and sinking fund charges payable by the city. The court there held that the amount of revenues derived by the lessee from the operation of the improvement was immaterial and the fact that such revenues might be less than the operating expenses of the lessee or less than the amount of the rental payable by the lessee to the city was of no concern. Accordingly, if the city incurs no cost of operation in connection with the facilities and if the lease agreement provides for the payment to the city of a sum sufficient to meet the interest and sinking fund charges payable on the indebtedness the proceeds of which are invested in the leased facilities, the project meets the requirements of the Act of 1921 and such indebtedness may be excluded in ascertaining the borrowing capacity of the city.

There being no questions of law other than those already determined and discussed above, from the petition and the evidence submitted in support thereof, the court makes the following

### Findings

1. The City of Philadelphia is the owner of certain facilities for the supply, treatment and distribution of water, referred to as the water supply system.

2. Pursuant to the provisions of sections 5-800 ($a$) and 5-801 of the Philadelphia Home Rule Charter, adopted April 17, 1951, the water department operates the city's water supply system and fixes and regulates charges and rates for supplying water, including charges in connection with water meters. Under section 5-801, the water department is legally obligated to fix rates and charges at a level such as to yield to the city at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for such purposes.

3. The status of the city's indebtedness invested or about to be invested in the water supply system is:

Debt outstanding March 31, 1954 .............. $34,644.401
Debt authorized and awaiting issue of March 31,
    1954 ...................................... 12,000,000
Debt conditionally authorized and awaiting issue
    March 31, 1954 ............................ 13,700,000

4. On May 7, 1951, the Court of Common Pleas No. 5 of Philadelphia County entered an order wholly excluding from the city's indebtedness in determining its power to incur debt, water supply system indebtedness in the aggregate amount of $53,175,044, including $12,000,000 authorized by the Ordinance of August 4, 1949, and not yet issued.

5. In the year 1953, the gross revenues from the sale of water and miscellaneous receipts attributable to the water supply system aggregated $12,735,857. The total cost to the city attributable to the operation of the water supply system aggregated $9,629,380. The net revenues, therefore, were $3,106,477. The total debt costs on the water supply system indebtedness for the year 1953, including interest and sinking fund charges, were $2,342,291. Accordingly, the net revenues to the city from operation of the water supply system were sufficient to pay the interest and sinking fund charges on such indebtedness and to yield a surplus for the year aggregating $762,445.

6. Estimates projected through the years 1954, 1955, 1956, 1957 and 1958 show that the water supply system may reasonably be expected to yield net revenues which, together with existing surplus, will be sufficient to pay the interest and sinking fund charges on the indebtedness invested or about to be invested in the water supply system. To the extent that such revenues based upon current rates and charges for water may, at some time in the future, prove to be insufficient to pay the operating expenses incurred by the city and interest and sinking fund charges on the indebtedness invested in the water supply system, such rates and charges are required by section 5-801 of the Home Rule Charter to be increased to a level sufficient to do so.

7. The City of Philadelphia is the owner of certain sewers, sewerage system and sewage disposal facilities, referred to as the sewer system. Pursuant to the provisions of section 5-800(b) and 5-801 of the Home Rule Charter, the water department operates the city's sewer system and fixes and regulates rates and charges for supplying sewage disposal services. Under section 5-801 the water department is legally obligated to fix rates and charges at a level such as to yield to the city at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for such purposes.

8. The status of the city's indebtedness invested or about to be invested in the sewer system is:

Debt outstanding March 31, 1954................$113,132,046
Debt authorized and awaiting issue March 31, 1954.    4,000,000
Debt conditionally authorized and awaiting issue
   March 31, 1954 ..........................   21,300,000

9. On May 7, 1951, the Court of Common Pleas No. 5 of Philadelphia County entered an order wholly excluding from the city's indebtedness in determining its power to incur debt, sewer system indebtedness in the aggregate amount of $125,980,477, including $2,-

000,000 authorized by the Ordinance of August 4, 1949, and not yet issued.

10. In the year 1953, the gross revenues from sewer rents and miscellaneous receipts attributable to the sewer system aggregated $8,530,667. The total cost to the city attributable to the operation of the sewer system aggregated $2,230,488. The net revenues, therefore, were $6,300,184. The total debt costs on the sewer system indebtedness for the year 1953, including interest and sinking fund charges, were $5,607,-944. Accordingly, the net revenues to the city from operation of the sewer system were sufficient to pay the interest and sinking fund charges on such indebtedness and to yield a surplus for the year aggregating $692,240. Such surplus, when added to surplus carried forward from December 31, 1952, resulted in a cumulative surplus aggregating $2,200,140.

1. Estimates projected through the years 1954, 1955, 1956, 1957 and 1958 show that the sewer system may be reasonably expected to yield net revenues which, together with existing surplus, will be sufficient to pay interest and sinking fund charges on the indebtedness invested or about to be invested in the sewer system. To the extent that such revenues based upon current rates and charges may at some time in the future prove to be insufficient to pay the operating expenses incurred by the city and interest and sinking fund charges on the indebtedness invested in the sewer system, such rates and charges are required by section 5-801 of the Home Rule Charter to be increased to a level sufficient to do so.

12. The City of Philadelphia proposes to acquire and construct certain facilities to be leased to the Philadelphia Transportation Company and to remove existing rails or railheads in connection with the conversion of the company's surface rail line on Frankford Avenue, between City Line and Bridge Street to a

trackless trolley line, referred to as the Frankford Avenue trackless trolley line.

13. The said facilities will be leased to and operated by the Philadelphia Transportation Company under an agreement dated April 23, 1954, providing for the reimbursement to the city by the Philadelphia Transportation Company for the interest and sinking fund charges on $750,000 principal amount of bonds to be issued pursuant to the loan authorization of the Ordinance of August 28, 1953, which was ratified by the voters on November 3, 1953, contingent upon the indebtedness being excluded from the city's general indebtedness in an appropriate proceeding under the Act of 1921. The city will incur no cost of operation in connection with such facilities.

14. Under section 5-901 of the Home Rule Charter, the department of public property is legally obligated to fix rates and charges for the use of the transit facilities, when any such facilities are not under lease to others, at a level such as to yield to the city at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for such purposes.

15. The status of the city's indebtedness about to be invested in the Frankford Avenue trackless trolley line is:

Debt outstanding March 31, 1954 .................        None
Debt authorized and awaiting issuance March 31,
    1954 .......................................$1,000,000
Debt conditionally authorized and awaiting issue
    March 31, 1954 .............................        750,000

16. On May 7, 1951, the Court of Common Pleas No. 5 of Philadelphia County entered an order wholly excluding from the city's indebtedness in determining its power to incur debt, Frankford Avenue trackless trolley line indebtedness in the amount of $1,000,000, authorized by the Ordinance of September 25, 1950, and not yet issued.

17. Estimates projected through the years 1954, 1955, 1956, 1957, 1958 and 1959 show that the Frankford Avenue trackless trolley line may reasonably be expected to yield net revenues sufficient to pay the interest and sinking fund charges on the indebtedness to be invested in said facilities.

In accordance with the foregoing findings, the court enters the following

### Order

And now, to wit, April 28, 1954, it is ordered and decreed, under and by virtue of the Act of May 21, 1921, P. L. 1054, and pursuant to the provisions of section 8, art. IX, of the Constitution of Pennsylvania, that the indebtedness about to be incurred by the City of Philadelphia aggregating $37,750,000, which proposed indebtedness is in addition to the indebtedness already wholly excluded in determining the city's power to incur debt under the decree of the Court of Common Pleas No. 5 as of March term, 1951, no. 1085, as follows:

*The Water Supply System:*
  Debt conditionally authorized and awaiting issue..$13,700,000
*The Sewer System:*
  Debt authorized and awaiting issue .............   2,000,000
  Debt conditionally authorized and awaiting issue..  21,300,000
*The Frankford Avenue Trackless Trolley Line:*
  Debt conditionally authorized and awaiting issue..    750,000

may be deducted from its indebtedness in ascertaining the borrowing power of the city by reason of the fact that the water supply system, sewer system and Frankford Avenue trackless trolley line may reasonably be expected to yield revenues in excess of operating expenses sufficient to pay the interest and sinking fund charges on such indebtedness, and that the proposed indebtedness aggregating $37,750,000 is hereby wholly excluded in determining the power of the City of Philadelphia to incur debt.