## Philadelphia Indebtedness Exclusion Petition.

Argued May 26, 1969. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Arsen Kashkashian, Jr.* and *Harold Rosenthal,* for appellants.

*Pace Reich,* Deputy City Solicitor, with him *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellee.

OPINION BY MR. JUSTICE ROBERTS, June 27, 1969:

On February 17, 1969, the City of Philadelphia petitioned the common pleas court to exclude from the calculation of the city's indebtedness certain bonds which it planned to issue in the amount of $87,330,-000 to finance the construction of extensions to the Broad-Ridge-Locust Subway System.

This action was taken under the authority of Article IX, §12 of the Pennsylvania Constitution which provides in relevant part: "In ascertaining the debt-incurring capacity of the City of Philadelphia at any time, there shall be deducted from the debt of said city so much of such debt as shall have been incurred,

or is about to be incurred, and the proceeds thereof expended, or about to be expended, upon any public improvement, or in construction, purchase or condemnation of any public utility, or part thereof, or facility thereof, if such public improvement or public utility, or part thereof, or facility therefor, whether separately, or in connection with any other public improvement or public utility, or part thereof, or facility therefor, may reasonably be expected to yield revenue in excess of operating expenses sufficient to pay the interest and sinking fund charges thereon." The Act of May 21, 1921, P. L. 1054, §1, 53 P.S. §16994 implements §12 and provides the procedure for the city to petition for a judicial determination whether the planned facilities "may reasonably be expected to yield revenue in excess of operating expenses sufficient to pay the interest and sinking fund charges thereon. . . ."

The court below held the appropriate hearing on March 17, 1969, and concluded after the taking of testimony that "Estimates projected for the years 1970 through 2002, inclusive, show that the transit facilities may reasonably be expected to yield net revenue sufficient to pay the interests and sinking fund charges on the indebtedness to be invested in the transit facilities." After the filing of exceptions by appellants the trial court issued a further explanation for its decision: "Southeastern Pennsylvania Transportation Authority . . . has obligated itself under its lease with the City of Philadelphia to pay interest and payments on account of principal on bonds issued to finance the extensions of its leased subway system provided the total rental is not in excess of $13,000,000 plus non-cumulative additional rent of approximately $1,700,000 totalling $14,700,000. Interest and principal payments on the bonds to be issued

will be approximately $5,663,000, far less than the minimum provided in the lease. In accordance with the terms of the lease SEPTA is obligated to produce the required revenues from fares, rents or other sources."

At first glance, it would appear that this non-negotiable undertaking and firm obligation on the part of SEPTA to provide these monies would be sufficient to satisfy the requirements of the Pennsylvania Constitution. However, appellants raise several objections. First, they contend that the city had the burden of proving that the increased passenger traffic due to the proposed extensions would yield sufficient additional revenue to pay for the rentals under the lease. In other words, appellants are urging that the city must prove that the new facilities of themselves will be self-supporting and produce sufficient net revenue before the indebtedness may be excluded. We believe this position to be in direct contradiction to both language of the constitution and the relevant case law.

Article IX, §12 specifically directs that in computing the "revenue in excess of operating expenses" the improvement can be viewed "separately, or in connection with any other public improvement or public utility." Thus even if the revenues derived from the proposed project alone will not support the required payments under the city's lease with SEPTA, the fact that part or all of the public transit system will provide the required amount of net revenues is sufficient to sustain the exclusion. This concept was clearly affirmed in *Kelley v. Earle,* 325 Pa. 337, 345, 190 Atl. 140, 144 (1937), in which this Court held: "A self-liquidating project may be defined as one wherein the revenues received are sufficient to pay the bonded debt and interest charges over a period of time. *The*

*source, of the receipt is not important."* (Emphasis supplied.) This same view has been reiterated in two trial court decisions in which improvements of the transit facilities of the City of Philadelphia were at issue. In *In re City of Philadelphia Petition,* 76 Pa. D. & C. 156, 167 (1951), the court said: "The fact that the revenues derived by the lessee from the operation of the improvement are less than the operating expenses of the lessee or less than the amount of the rental payable by the lessee to the City is immaterial." This point was reaffirmed in *In re City of Philadelphia Petition,* 89 Pa. D. & C. 189, 193 (1954).

Second, appellants argue that the city failed to prove the financial responsibility of SEPTA to perform its obligations under the lease. It is our view that under the instant circumstances the proof of a long and successful financial history in the operation of the transit facilities was both impossible and unnecessary. Before the recent acquisition by SEPTA of the Philadelphia Transportation Company, its activities were limited to subsidized rail transit. Thus any relevant history would go back no more than one year. Further, SEPTA has certain obligations imposed upon it by the Metropolitan Transportation Authorities Act, Act of August 14, 1963, P. L. 984, 66 P.S. §2001 et seq., pursuant to which SEPTA was incorporated. That act clothes SEPTA with the authority "to fix, alter, charge and collect fares, rates, rentals and other charges for its facilities . . . for the purpose of providing for the payment of all expenses and obligations of the authority." Id. §4(d)(9). The statutory enactment places upon SEPTA both the legal duty and responsibility to provide sufficient funds for the payment of its lease obligations and the legal authority and requirement to fix, charge and collect fares sufficient in amount to produce the revenue re-

quired to pay its contractual commitments. This obligation on a creation of the Commonwealth would appear to be sufficient justification to expect SEPTA to remain financially responsible.

Lastly, the response of a trial court to this type of argument in an earlier case seems apposite: "It must also be realized that the finances of the lessee company are not material in this matter since the rental payable to the city under the relevant lease is not payable out of the profits of the lessee company but it is a part of the operating expenses which must be paid by it . . . . We cannot conceive that there will ever come a time when there will not be operating transit lines of some kind or description in the City of Philadelphia. As long as they exist, their operating expenses will be paid to the City of Philadelphia, analogous to the payment of the salaries of employes and the cost of materials. . . . Unless the transit facilities of the city are entirely wiped out by some catastrophe, we have a reasonable right to expect that the revenues recited in the petition will be received." *In re City of Philadelphia Petition,* 76 Pa. D. & C. 156, 167-68 (1951). As in 1951, today it appears no less likely during the period the proposed bond issue will be outstanding, that the transit facilities or some variation thereof will be in operation.

Finally, appellants contend that because the payment of noncumulative additional rent by SEPTA to the city is dependent on net revenues, which may or may not exist, the effect in any year in which SEPTA does not make such payments is a subsidy from the city rendering the bonds not self-liquidating. However, this entire line of reasoning is irrelevant to the issue now before us. SEPTA has contractually assumed *an absolute obligation to pay the city sufficient funds to pay off these bonds.* This obligation may

in no way be waived, amended or reduced, so long as the city desires to have these bonds excluded in the computation of its indebtedness. Upon this very obligation on SEPTA does the city predicate its position that the project is self-liquidating and that the bond issue should be excluded from the calculation of the city's indebtedness. The fact that there is an *additional* promise on the part of SEPTA to pay *more money* under certain circumstances and that these funds are above and beyond any payment necessary to amortize the bonds has absolutely no bearing on the issue before us. Any other contractual arrangements between the parties so long as they do not alter the essential characteristics of SEPTA's obligation to repay the bonds, need not be considered at this time.

Since we have concluded that the action taken by the court below is entirely appropriate, its order is affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.